UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET ODESSA LITTAU,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-00614-KJN<br><br><br><br>ORDER |

Plaintiff Janet Odessa Littau seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 17.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 20.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.  BACKGROUND

Plaintiff was born on December 19, 1978, and has completed a GED.[2] (Administrative Transcript ("AT") 186, 190, 238.) On March 29, 2012, plaintiff applied for DIB and SSI, alleging that her disability began on March 26, 2011. (AT 186, 190.) Plaintiff claimed that she was disabled due to mental health issues and severe migraines. (AT 87.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on January 14, 2014. (AT 47–86.) At the hearing, plaintiff was represented by Donald E. Bartholomew. (AT 49–50.) Testimony was provided by plaintiff and Susan Creighton-Clavel, a vocational expert ("VE"). The ALJ subsequently issued a decision dated April 24, 2014, determining that plaintiff had not been under a disability as defined in the Act, from March 26, 2011, through the date of the ALJ's decision. (See AT 19–32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 30, 2015. (AT 5–8.) Plaintiff subsequently filed this action on March 23, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ erred at step two; (3) whether the ALJ improperly discounted plaintiff's credibility; (4) whether the ALJ improperly relied on the VE's testimony; and (5) whether the ALJ's RFC was without substantial evidence support.[3]

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff meet

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

3

the insured status requirements of the the Act through December 31, 2016. (AT 24.) At step one, the ALJ concluded that plaintiff had engaged in substantial gainful activity since March 26, 2011, the alleged onset date. (Id.) Specifically, plaintiff performed two jobs that rose to the level of substantial gainful activity until March 28, 2012. (Id.)

At step two, the ALJ found that plaintiff had the following severe impairments: mood disorder, anger disorder, headaches, and obesity. (Id.) However, at step three the ALJ concluded that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 25.) Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid concentrated exposure to noise, fumes and dust; the claimant is limited to simple repetitive tasks with no production rate or pace work; the claimant can have no interaction with the public and only occasional interaction with coworkers; the claimant cannot perform any tandem tasks with coworkers and the claimant is likely to miss one day of work per month due to a headache or anger issues.

(AT 26.) At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 30.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, there were jobs that existed in significant

---

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

numbers in the national economy that plaintiff could have performed.  (Id.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from March 26, 2011, through April 24, 2014.  (AT 31–32.)

>   B.   Plaintiff's Substantive Challenges to the Commissioner's Determinations

>   >   1.  *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

---

[5] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

5

non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### i. Sid Cormier, Ph.D.

Plaintiff argues that the ALJ failed to provided clear and convincing reasons for rejecting Dr. Cormier's allegedly uncontroverted opinion. (ECF No. 17 at 25.) However, the state agency medical consultants opined that plaintiff should be limited to simple work, in controversion to Dr. Cormier's opinion. (See AT 91–108, 111–36.) Therefore, the ALJ was required to provide specific and legitimate—not clear and convincing—reasons to reject Dr. Cormier's opinion. See Lester, 81 F.3d at 830–31.

As an initial matter, the ALJ considered Dr. Cormier's opinion in significant detail:

> On May 8, 2012, the claimant was evaluated by a psychological consultative examiner, Sid Cormier, Ph.D., a licensed clinical psychologist [AT 449–53]. The mental status examination revealed the following positive findings: anxious mood with guarded affect. The findings from the mental status examination were otherwise unremarkable [AT 451]. Dr. Cormier diagnosed bipolar disorder, not otherwise specified as a provisional diagnosis, and social phobia and assessed a global assessment of functioning (GAF)[6] score of 55 currently indicating moderate symptoms or difficulty functioning [AT 452]. He also opined that her GAF score during the past year was 70, indicating mild symptoms. Based on the examination, from a psychological standpoint, he opined that the ramifications of this woman's poorly managed bipolar disorder and probable social phobia may moderately to seriously impair her current ability to perform not only complex and detailed tasks, but simple and repetitive ones as well. The doctor opined that the aforementioned conditions are likely to moderately to seriously impair her ability to maintain regular attendance and perform work activities on a consistent basis. Her ability to complete a normal workday or workweek without interruptions resulting from the ramifications of her bipolar disorder and social phobia appears moderately to seriously impaired. The doctor opined that her mental status information indicated that she is capable of accepting and remembering instructions from supervisors. Her history and interview behavior suggested probable significant impairment with respect to her ability to interact with coworkers and the general public. Her history and response to the stress of the evaluation suggested probable significant impairment regarding her ability to deal with typical stresses that she might encounter in a competitive work situation. She did not demonstrate impairment regarding

---

[6] A GAF score reflects a clinician's rating, on a continuum of mental health-illness (0–100), of a patient's overall functioning. Diagnostic and Statistical Manual of Mental Disorders, (4th Edition 1994) (DSM-IV), American Psychiatric Ass'n, pages 30–32.

6

> sustained concentration but did display moderate impairment regarding pace or persistence [AT 451–52].

(AT 28.)

The ALJ subsequently afforded little weight to Dr. Cormier's opinion for two specific and legitimate reasons. (AT 29.) First, the ALJ concluded that Dr. Cormier's "opinion is inconsistent with his own mental status examination, which found that the claimant had intact concentration, no significant disorganization of thought, intact foresight and memory and drove herself to the evaluation." (AT 29.) The ALJ's conclusion is supported by substantial evidence in the record, specifically Dr. Cormier's own findings. (See AT 449, 451.) The ALJ reasonably determined that these normal findings by Dr. Cormier did not support the more extreme limitations he opined.

Second, and more importantly, the ALJ rejected Dr. Cormier's opinion because he concluded that "this one time examination is not consistent with the longitudinal treating records since the examination." (AT 29.) This determination is also supported by substantial evidence in the record. As the ALJ explained, plaintiff initially "reported an increase in her symptoms in early 2012 due to additional family stress." (AT 28.) From December 2011, through April 2012, Plaintiff received counseling from the Tehama County Health Services Agency, in order to facilitate reunification with one of her daughters, pursuant to direction from Child Protective Services ("CPS"). (See AT 425–32.) On August 3, 2012, plaintiff was assessed with a GAF of 55. (AT 484.) Thereafter, plaintiff's condition improved.

As the ALJ noted, "(a) progress note in October 2012 revealed a normal mental status examination and a euthymic mood. The claimant was described as improving and stable." (AT 28–29, 475–76.) Additionally, the ALJ relied on the records from treating physician assistant Lacey Townsend, from May 2012 through October 2013, which demonstrate "that the claimant had a euthymic mood most of the time and her mental status examinations were mostly normal with no significant objective findings." (AT 29, 436–45, 471–93, 517–64.) In fact, PA Townsend observed plaintiff's mood as euthymic in the vast majority of the mental status examinations she performed. (See AT 472, 476, 484, 488, 518, 529, 535, 541, 547.) Moreover, the GAF scores assessed by PA Townsend demonstrate that plaintiff's ability to function

continued to improve since Dr. Cormier's May 2012 examination: August 3, 2012, GAF at 55 (AT 484, 559); November 30, 2012, GAF at 60 (AT 472); January 4, 2013, GAF at 60 (AT 550); May 3, 2013, GAF at 65 (AT 541); and October 14, 2013, GAF at 65 (AT 518). This trend supports the ALJ's conclusion that Dr. Cormier's opinion is inconsistent with plaintiff's longitudinal progress.

Therefore, the court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Cormier's opinion.

### ii.     Lacey Townsend, PA

Plaintiff asserts that while the ALJ purported to give significant weight to the opinion of PA Townsend, the ALJ provided "an inaccurate conclusory characterization of [PA Townsend's] observations of Ms. Littau['s] condition." (ECF No. 17 at 23–24.) This argument is not persuasive. As detailed above, the ALJ appropriately summarized PA Townsend's treatment notes as documenting mostly normal mental status examinations, where plaintiff displayed a euthymic mood. (See AT 436–45, 471–93, 517–64.) Even assuming, without deciding, that plaintiff's characterization of PA Townsend's treatment records—as "consistent with Dr. Cormier's diagnoses and limitations" (ECF No. 17 at 25)—were also reasonable, the court will not disturb the ALJ's contrary conclusion because it is reasonable and supported by substantial evidence in the record. See Tommasetti, 533 F.3d at 1038.

### iii.    Heidi Mist, MD and Terry Kinney, PA

Additionally, plaintiff argues that the ALJ erred because he "did not discuss treating sources Dr[]. Mist's and PA-C Kinney's progress notes and diagnoses at all and therefore failed to provide legally sufficient reasons to discredit their opinions." (ECF No. 17 at 24.) Yet, plaintiff's assertion regarding PA Kinney's progress notes is flatly wrong. The ALJ explicitly discussed and relied on treatment notes from PA Kinney to demonstrate how plaintiff's medical records supported the RFC:

> The claimant has been treated for a history of mental health impairments including a mood disorder. However, a progress note in March 2011 indicated that the claimant had a euthymic mood and reported no medication side effects and no psychotic symptoms [see AT 325]. Further, the claimant was described as stable on her

>medications in June 2011 and reported doing well in August 2011 [see AT 319].

(AT 28.)

To the extent that the ALJ did not discuss certain treatment notes, when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). Importantly, "the ALJ is not required to discuss evidence that is neither significant nor probative." Id.

Neither Dr. Mist nor PA Kinney ever officially opined as to plaintiff's work related limitations in a disability function report. Still, the ALJ sufficiently addressed the treatment notes from PA Kinney, finding that these records supported the ALJ's conclusions regarding plaintiff's RFC. As to Dr. Mist, plaintiff only cites to a single treatment note from July 11, 2011. (AT 317.) To the extent that this single treatment note was a medical opinion, it was neither significant nor probative, in light of the significant treatment notes from both PAs Kinney and Townsend that came before and after July 11, 2011, and provided substantially more detail and insight into plaintiff's conditions. Therefore, the court finds that the ALJ did not err by failing to specifically discuss Dr. Mist's treatment note.

2. *Whether the ALJ erred at step two*

According to plaintiff, "[b]ecause ALJ Welton provide[d] no explanation at Step 2 for rejecting the universal opinion of all medical sources that Ms. Littau has a severe anxiety disorder, remand is required." (ECF No. 17 at 22–23.)

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

9

Plaintiff's assertion that all medical professions involved have universally opined that plaintiff had a severe anxiety disorder is, at best, a gross overstatement of the record. Aside from Dr. Mist's single progress note from July 11, 2011 (AT 317), no other treating provider diagnosed plaintiff with a separate and distinct diagnosis of "anxiety disorder." PA Kinney noted that plaintiff subjectively complained of anxiety three times—twice that her anxiety was "decreased." (See AT 361, 388, 389.) But, PA Kinney never diagnosed plaintiff with anxiety disorder. (See AT 347, 361, 363, 366, 376, 378, 388, 389.) Similarly, on a few occasions, PA Townsend noted that plaintiff complained of anxious thoughts or had an anxious mood (see AT 439, 538, 544, 549), and that plaintiff was receiving medication for "anxiety/depression." (See AT 518, 529, 535, 538.) However, PA Townsend's never listed "anxiety disorder" as a separate diagnosis, nor even as an historical diagnosis. (See AT 436, 439, 442, 471, 475, 479, 483, 487, 517, 528, 534, 537, 540, 543, 546, 548.) Additionally, Lon T. Clark, LMFT, who plaintiff saw at the behest of CPS, diagnosed plaintiff with mood disorder and attention deficit/hyperactivity disorder, but not anxiety disorder. (See AT 428.) Thus, the overwhelming majority of plaintiff's medical record does not support a finding that plaintiff is severely impaired by an "anxiety disorder" separate and distinct from her mood and anger disorders.

Even assuming, without deciding, that the ALJ technically erred by not finding plaintiff's anxiety disorder severe for purposes of step two, such error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). Here, because the ALJ found another mental impairment to be severe at step two, the ALJ proceeded to the subsequent steps of the sequential disability evaluation process. Indeed, the functional capacity reports from state agency medical consultants Timothy Schumacher, Ph.d and L. Colsky, MD, upon which the ALJ substantially relied to formulate the RFC, incorporated plaintiff's symptoms potentially attributable to anxiety. (AT 95, 106, 120, 133.) Indeed, plaintiff was limited to no interaction with the public and only occasional interaction with coworkers, based upon her anxiety being aggravated by close interactions with the general public and strong critical supervision. (See AT 26, 95, 106, 120, 133.) Accordingly, the court finds no prejudicial error at step two.

3. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of limitations from her mental health issues and headaches. Indeed, the ALJ limited

11

plaintiff to simple repetitive tasks, with no production rate or pace work, no interaction with the public, occasional interaction with coworkers, and no tandem tasks with coworkers. (AT 26.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so. Specifically, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible" based upon the objective medical evidence in the record, plaintiff's failure to follow treatment recommendations, conservative treatment she received, and her daily activities. (AT 27–28.)

### i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here the ALJ concluded that "[t]he credibility of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." (AT 27–28.) Specifically, the ALJ relied on "the positive objective clinical and diagnostic findings since the alleged onset date." (AT 28.) As explained above, substantial evidence in the record supports this conclusion. Plaintiff's progress notes demonstrate a stable condition in 2011 (see AT 319–25); increased symptoms due to family conflict in late-2011 through mid-2012 (see AT 425–45); followed by improving GAF scores, mostly unremarkable mental status examinations, and persistent euthymic moods. (See AT 436–45, 471–93, 517–64.)

### ii. Failure to follow treatment recommendations

The ALJ also discounted plaintiff's credibility based on her testimony "that she was not in counseling or therapy for her anger issues." (AT 28.) Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th

Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

Here, as the ALJ noted, plaintiff testified that she has not enrolled in therapy, beyond the limited sessions mandated by CPS from December 2011 through April 2012. (See AT 55–56, 425–432 .) Yet, plaintiff was consistently referred to family and individual counseling by PA Townsend through 2013. (See AT 473, 477, 481, 519, 530, 536, 539, 542, 545, 547, 550.) Thus, the ALJ appropriately determined that plaintiff's failure to follow through on these recommendations undermined her credibility as to the severity of her mental health conditions.

### iii. Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ observed that "[t]he medical evidence indicates the claimant received routine conservative treatment for complaints of headaches and a mood disorder. The lack of more aggressive treatment or treatment by a specialist suggests the claimant's symptoms and limitations were not as severe as she alleged." (AT 28.) Plaintiff asserts that the ALJ has mischaracterized the evidence and ignored the fact that plaintiff has been treated with Trileptal and Topamax for her headaches. (ECF No. 17 at 27.) However, plaintiff's characterization of the record is inaccurate, while the ALJ's conclusion is reasonable and supported by substantial evidence in the record.

In plaintiff's headache questionnaire she claimed that she only takes over the counter

Ibuprofen for her headaches. (AT 246.) At the hearing, plaintiff again testified that she only takes Ibuprofen for her headaches; she has not kept a headache log; and she has not seen a neurologist. (AT 53.) Plaintiff further testified that she is prescribed Topamax for bipolar disorder and not for her headaches. According to plaintiff, Topamax is "also known as a preventative for migraines, but it doesn't work that way for me." (AT 74.) Moreover, plaintiff's attorney at the hearing asserted that "[i]n her case [Topamax is] prescribed for bipolar disorder." (AT 75.) While a single treatment note from August 3, 2012, stated that plaintiff "[w]ould like to try topamax for ha" (AT 558), no other treatment notes show that Topamax was being prescribed for plaintiff's headaches. Thus, the ALJ reasonably concluded that plaintiff is not being prescribed Topamax for her migraines, based upon the testimony of plaintiff and her attorney. What is more, there is no indication that plaintiff was ever prescribed Trileptal for headaches, contrary to plaintiff's assertion. In fact, treatment notes indicate that Trileptal has been prescribed for plaintiff's anger issues. (See AT 550, 555.)

### iv. Daily activities

Substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with her allegations of disabling symptoms and limitations. (See AT 51, 251–58.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

14

Here, the ALJ concluded that the plaintiff had "somewhat normal level of daily activity and interaction . . . including caring for her mother, preparing meals and household chores" and that plaintiff's "ability to participate in such activities undermined the credibility of [her] allegations of disabling functional limitations" because "some of the physical and mental abilities and social interactions required . . . to perform these activities are the same as those necessary for obtaining and maintaining employment." (AT 27.)  The ALJ's conclusion is supported by plaintiff's own testimony and self-reported activities. (See AT 51, 251–58.)

To be sure, the record also contains some contrary evidence—such as plaintiff needing to "hole up for a week in [her] bedroom" every time she gets scared (AT 59), and plaintiff having uncontrollable "manic rages" (AT 64)—suggesting that plaintiff's activities are more limited. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

### 4. *Whether the ALJ improperly relied on the VE's testimony*

Plaintiff asserts that the ALJ erred by relying on the VE's testimony to find that there were a significant number of jobs in occupations that plaintiff could perform. (ECF No. 17 at 28.)  Specifically, plaintiff argues that "[t]he ALJ's limitation of "simple repetitive tasks" does not permit Ms. Littau to engage in the 'level 2' and 'level 3' reasoning required by the three jobs identified by the vocational expert." (Id.)  Additionally, plaintiff asserts that the VE erroneously

relied "on the Department of Labor's Occupational Information Network ("O*Net"), without discussion," rather than the Dictionary of Occupations Titles ("DOT"). (Id. at 29)

As an initial matter, plaintiff failed to raise these evidentiary issues before either the ALJ or the Appeals Council. The Ninth Circuit has held that, unless manifest injustice would result, claimants must generally "raise all issues and evidence at their administrative hearings in order to preserve them on appeal," at least when claimants are represented by counsel. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). This requirement is because the ALJ as the fact-finder, rather than a federal court reviewing under a substantial evidence standard of review, is the appropriate person to resolve factual and evidentiary inconsistencies. Indeed, at the administrative hearing, the vocational expert is subject to cross-examination by plaintiff's representative, and is on hand to address any inconsistencies between the expert's own findings and those proffered by the plaintiff. To generally permit claimants to later second-guess a vocational expert's testimony in their federal court appeals, when the claimants failed to challenge such testimony in the administrative proceedings below, would inject a significant amount of inefficiency into an already-delayed claim resolution process, and also impermissibly alter the scope of judicial review of Social Security claims.

In this case, plaintiff, who was represented by attorney Donald E. Bartholomew, did not object to the VE's qualifications or testimony. (See AT 78–85.) Neither did plaintiff, through her representative, question how the VE interpreted the limitation "simple repetitive tasks," nor whether the VE was relying on O*Net or the DOT. (See Id.) Nor did plaintiff submit to the Appeals Council any evidence challenging the VE's testimony. (See AT 5–8.) As such, the court concludes that any issue concerning the VE's testimony is waived. For the reasons discussed below, plaintiff has also not made an adequate showing of manifest injustice to overcome the waiver.

Even assuming *arguendo* that no waiver occurred, the court finds that the ALJ properly relied on the VE's testimony. First, the three jobs identified by the VE, and relied upon by the ALJ, require level 2 reasoning only. (See AT 31, 80–81.) Moreover, contrary to plaintiff's unsupported assertion, a limitation to "simple repetitive tasks" is not inconsistent with a job that

requires level 2 reasoning. See Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015) (holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning" as opposed to the demands of level 2 reasoning); Salas v. Astrue, No. 1:10-CV-0478 SKO, 2011 WL 2620370, at *7 (E.D. Cal. June 29, 2011) (noting that a "mental RFC for simple, routine work has been found to be generally consistent with DOT job descriptions requiring a reasoning level of 2"); see also Meissl v. Barnhart, 403 F.Supp.2d 981, 984 (C.D.Cal.2005); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir.2005); Lara v. Astrue, 305 Fed. App'x 324, 326 (9th Cir.2008)).

Second, there is nothing in the record to support plaintiff's bald assertion that the VE relied on the O*NET rather than the DOT. During the hearing the VE used DOT job classifications and job codes. (E.g., AT 80 ("[o]ne would be an office helper, and that is 239.567-010, light, 2").) Furthermore, the VE explicitly testified that she relied on the DOT, when reaching her conclusions. (See AT 81.) Therefore, the VE's testimony constitutes substantial evidence upon which the ALJ was entitled to rely.

        5. *Whether the ALJ's RFC was without substantial evidence support*

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidence support is not well taken.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

////

////

////

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: December 26, 2017

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14/ss.16-614.littau.order re MSJ